**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHAWN BAGGETT, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **Case No. 18 Civ. 6645** |
| -against- | |
| **365 SEKI, INC.; SEKI, INC.; NEW LIFE SUSHI, INC.; ZHONG SHEN SHI a/k/a SEKI SHI; and BI HANG CHENG;** | **CLASS ACTION COMPLAINT** |
| **Defendants.** | |

Plaintiff Shawn Baggett (hereinafter, "Baggett" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime compensation, misappropriated tips, call-in pay, and other damages for Plaintiff and his similarly situated co-workers – servers, bartenders, bussers, food runners, and other similarly situated tipped employees (collectively, "Tipped Employees") – who work or have worked at Sushi Seki located at 365-367 West 46th Street, New York, New York 10036 ("Sushi Seki Times Square"), 208 West 23rd Street, New York, New York 10011 ("Sushi Seki Chelsea"),  and 1143 1st Avenue, New York, New York 10065 ("Sushi Seki UES") (collectively, "the Sushi Seki Restaurants").

2.      Owned and/or operated by Seki, Inc., 365 Seki, Inc., New Life Sushi, Inc., and Zhong Shen Shi a/k/a Seki Shi ("Shi"), and Bi Hang Cheng ("Cheng") (collectively,

"Defendants"), the Sushi Seki Restaurants are high-end sushi restaurants that have been featured in various publications[1], and have received rave reviews over the years.[2]

3.    Defendants have been part of a single integrated enterprise that has jointly employed Tipped Employees at Sushi Seki Times Square, Sushi Seki Chelsea, and Sushi Seki UES.

4.    The Sushi Seki Restaurants are linked together through a centralized website – http://sushiseki.com – which provides links to all of the Sushi Seki Restaurants.[3] This central website allows visitors to explore each of the Sushi Seki Restaurants through virtual tours, book reservations at each restaurant, make delivery orders at each restaurant, check each restaurant's hours of operation, and review the menus at each restaurant. The central website also links users to various press publications regarding the Sushi Seki Restaurants, without differentiating between locations. Gift certificates offered through this central website may also be redeemed at any of the Sushi Seki Restaurants.[4]

5.    The ownership and upper management of Sushi Seki do not change among locations according to the central website. In this regard, in the "The Team" link, Defendant Shi is identified as owner and chef of all locations and Yasuyuki Suzuki is identified as general

---

[1] See e.g., Eater New York City, *Watch: New York City's Go-To Spot for Sashimi After Midnight*, Dec. 27, 2017 (*available at* https://www.eater.com/2017/12/27/16812954/sushi-seki-late-night-nyc-video, *last accessed*, July 23, 2018); Jennifer Gould Keil, *Sushi Seki opening in Chelsea, Le Pain going east*, Jan. 20, 2014 (*available at* https://nypost.com/2014/01/20/seki-sushi-moving-to-chelsea-le-pain-going-east, *last accessed*, July 23, 2018); Florence Fabricant, *Japanese Restaurants Focus on Specialties*, Sept. 8, 2015 (*available at* https://www.nytimes.com/2015/09/09/dining/japanese-restaurants-focus-on-specialties.html, *last accessed* July 23, 2018); Eric Asimov, *Restaurants; Sushi With Respect for Past and Present*, Nov. 27, 2002 (*available at* http://www.nytimes.com/2002/11/27/dining/restaurants-sushi-with-respect-for-past-and-present.html, *last accessed* July 23, 2018).
[2] See e.g., Zagat (*available at* https://www.zagat.com/r/sushi-seki-new-york, *last accessed*, July 23, 2018).
[3] See The Team Page, Sushi Seki Website (available at http://www.sushiseki.com/team-1, *last accessed* July 23, 2018).
[4] Gift Certificates, Sushi Seki Website (available at https://www.giftfly.com/shop/sushi-seki, last accessed July 23, 2018) (stating "Gift Cards can be redeemed at all three of our locations.").

manager of the Sushi Seki Restaurants without any differentiation among locations.[5]

6.      Upon information and belief, Defendants allow employees, including Tipped Employees and managerial employees, to transfer between the Sushi Seki Restaurants without retraining or reapplication. In this regard, Yasuyuki Suzuki, who is identified as general manager on the central website, is general manager for all three restaurants. Moreover, based on information and belief, Stephanie (l/n/u) is another manager who splits time among the restaurants, specifically, between the Chelsea and Times Square locations. Recently, management informed Tipped Employees at the Times Square location that Koichi Ishiguro, the wine director at the Chelsea restaurant, would begin to also spend time at the Times Square location.

7.      At all times relevant, Defendants have paid Plaintiff and similarly situated Tipped Employees at or below the applicable "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped employees.

8.      Defendants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") that would allow them to apply a "tip credit" to Tipped Employees' wages.

9.      In this regard, Defendants failed to provide Tipped Employees with written notification of the tipped minimum wage rate or tip credit provisions of the NYLL.

10.      Defendants misappropriated gratuities from Plaintiff and other Tipped Employees by requiring them to engage in a tip distribution scheme where tips were shared with employees in positions that are not entitled to tips under the FLSA and/or NYLL, including, but not limited to, sushi chefs and sushi chef helpers (together, "Sushi Chefs"), Service & Beverage Director(s) and/or sommeliers (together, "Service & Beverage Directors"), and expeditors.

---

[5] *See* The Team Page, Sushi Seki Website (*available at* http://www.sushiseki.com/team-1, *last accessed* July 23, 2018).

11.     Individuals employed as Sushi Chefs are responsible for preparing and making sushi and have virtually no customer interaction.  In this regard, Sushi Chefs do not wait on customers, take customer orders, or deliver food or beverages to customers.  As a result, Sushi Chefs at Sushi Seki are not entitled to share tips under the FLSA or the NYLL. *See e.g.*, *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 132 (S.D.N.Y. 2014) (denying defendants' motion for summary judgment where plaintiffs maintained that sushi chefs did not take customer orders, had no contact with customers, and did not serve customers seated at the sushi bar); *see also Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1363 (S.D. Fla. 2009) (same); *Mackereth v. Kooma, Inc.*, No.14 Civ. 04824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) (denying motion to dismiss where plaintiffs alleged a requirement to share tips with sushi chefs).

12.     Individuals employed in the position of Service & Beverage Directors are responsible for curating the restaurants' wine and sake list(s) but have virtually no customer interaction, as they do not readily take orders from customers, do not bus customers' plates or glasses, do not set tables for customers, and spend the majority of their shift in the back office, away from customer view.  Additionally, Service & Beverage Directors at Sushi Seki also have meaningful authority or control over Tipped Employees, thus barring them from participating in any tip sharing arrangement. *See Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (N.Y. 2013). In this regard, Service & Beverage Directors, such as Rick Zouad, discipline employees, monitor sick day usage, enforce the company's "three strikes" policies relating to call outs, interview job applicants, create schedules, assist Tipped Employees with changing information in the company's payroll system, evaluate job performance by Tipped Employees, run pre-shift meetings, and otherwise act as service managers on the floor during work shifts.  As such, Service & Beverage Directors at Sushi Seki are not entitled to share tips under the FLSA and/or the NYLL.

13.     Individuals employed as expeditors are responsible for plating food and garnishing dishes in the kitchen. Expeditors have virtually no customer interaction, do not take orders from customers, do not bus customers' plates or glasses, and do not set tables for customers. In addition, expeditors primarily remain in the kitchen away from customer view to perform their duties. As a result, expeditors at Sushi Seki are not entitled to share tips under the FLSA and/or the NYLL.

14.     Defendants also maintain a policy and practice whereby Tipped Employees are required to spend more than 20% of their shift and/or 2 hours performing non-tip producing side work, including, but not limited to, general cleaning of the restaurants, stocking and cleaning service areas, folding napkins with chopsticks, and polishing and restocking silverware and glassware.

15.     Defendants require Tipped Employees to perform side work at the start, during, and at the end of each shift, usually before or after service when the restaurants are closed to the public.

16.     The duties that Defendants require Tipped Employees to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

17.     The side work that Defendants require Tipped Employees to perform include, but is not limited to: 1) cleaning and setting up tables throughout the restaurants, 2) rolling hot towels, 3) rolling napkins with chopsticks, 4) polishing utensils and glassware, 5) setting up, refilling, and breaking down service stations, 6) emptying, cleaning and filling up soy sauce containers, 7) setting up and breaking down Tatami rooms, including cleaning cushions and cleaning rooms; 8) putting used towels into the laundry in the basement; 9) dusting throughout the restaurants; 10) wiping down chairs and table legs; 11) taking inventory of sake and wine bottles in walk-in refrigerators; 12) restocking sake and other alcohol bottles; 13) dropping off curtains to the dry

cleaners; 14) making and refilling green tea; 15) folding toilet paper into origami triangle pattern; 16) refilling ice; and 17) attending pre-shift meetings.

18.    The side work that Defendants require of Tipped Employees is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.  Furthermore, Defendants require Tipped Employees to perform most side work before the restaurants open or after the restaurants clos and customers leave.  As means of examples, Tipped Employees are required to arrive at 3:30 p.m. for a 5:00 p.m. dinner shift to perform side work and are required to remain at the restaurants after customers leave to perform closing side work.

19.    Additionally, Defendants required Tipped Employees to attend pre-shift meetings that ran between 20 and 30 minutes long per shift, for which Tipped Employees were paid at the tip-credit rate.

20.    Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments. Despite this, Tipped Employees are not required to record the amount of time they spend performing side work.

21.    Throughout Plaintiff's employment, Defendants also maintained a policy and practice whereby Tipped Employees were not paid the appropriate premium overtime pay for hours worked in excess of 40 per workweek.

22.    Defendants also maintained a policy and practice whereby Tipped Employees were not properly compensated "call-in pay" as required by the NYLL.

23.    Defendants failed to provide Tipped Employees with proper annual wage notices as required by the NYLL.

24.    Defendants also failed to provide Tipped Employees with accurate wage statements with each payment of wages as required by the NYLL.

25.     Defendants have had knowledge that their wage and hour policies and practices violate the FLSA and NYLL.  In this regard, Defendants were sued in 2016 for wage and hour violations, including, but not limited to, failure to provide proper notice of the tip credit and mandating that Tipped Employees share tips with tip ineligible employees. *See Atanasoska et al v. 365 Seki, Inc. et al.*, No. 16 Civ. 01217 (ER) (S.D.N.Y. Feb. 17, 2016). Despite this lawsuit, Defendants have continued to apply the same or similar wage and hour policies that violate the FLSA and NYLL.  As a result, they have acted willfully under the FLSA.

26.     Plaintiff brings this action on behalf of himself and all similarly situated current and former Tipped Employees who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated employees of their lawfully earned wages.

27.     Plaintiff also brings this action on behalf of himself and all similarly situated current and former Tipped Employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

### THE PARTIES

**Plaintiff**

**Shawn Baggett**

28.     Baggett is an adult individual who is a resident of Brooklyn, New York.

29.     Baggett has been employed by Defendants as a server – a Tipped Employee – at the Sushi Seki Times Square from in or around September 2017 to June 2018.

30.     Baggett is a covered employee within the meaning of the FLSA and NYLL.

31.     A written consent form for Baggett is being filed with this Class Action Complaint.

**Defendants**

32.    Defendants have jointly employed Plaintiff and similarly situated employees at all times relevant.

33.    Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.    Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

35.    During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and the NYLL.

**365 Seki, Inc.**

36.    Together with the other Defendants, 365 Seki, Inc. has owned and/or operated the Sushi Seki Restaurants during the relevant time period.

37.    365 Seki, Inc. is a domestic business corporation organized and existing under the laws of New York.

38.    365 Seki, Inc. is listed as the "Premises Name" on the active New York State Liquor License for Sushi Seki Times Square.

39.    The Division of Corporations filing with the New York State Department of State identifies 1143 1st Avenue, New York, New York 10065 as the address to which 265 Seki, Inc. will accept mail process.  This is the address of the original UES Sushi Seki restaurant.

40.    365 Seki, Inc. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

41.    At all relevant times, 365 Seki, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.  In this regard, 365 Seki, Inc.

is the corporate payee listed on Plaintiff's pay stubs.

42.    365 Seki, Inc. applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Seki Restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

43.    At all relevant times 365 Seki, Inc. has an annual gross volume of sales in excess of $500,000.  In this regard, 365 Seki, Inc. has admitted in past litigation to having gross volume of sales in excess of $500,000.[6]

**Seki, Inc.**

44.    Together with the other Defendants, Seki, Inc. has owned and/or operated the Sushi Seki Restaurants during the relevant time period.

45.    Seki, Inc. is a domestic business corporation organized and existing under the laws of New York.

46.    Seki, Inc. is listed as the "Premises Name" on the active New York State Liquor License for Sushi Seki Chelsea.

47.    The Division of Corporations filing with the New York State Department of State identifies Seki, Inc.'s Chief Executive Officer as Defendant Bi Hang Cheng and its Principle Executive Office at 208 West 23rd Street, New York, New York 10011.

48.    Seki, Inc. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

49.    At all relevant times, Seki, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

---

[6] *See Atanasoska*, No. 16 Civ. 01217 (ER), ECF No. 15 ¶ 9 (S.D.N.Y. April 25, 2016).

50.     Seki, Inc. applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Seki Restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

51.     At all relevant times Seki, Inc. has an annual gross volume of sales in excess of $500,000. In this regard, Seki, Inc. has admitted in past litigation to having gross volume of sales in excess of $500,000.[7]

**New Life Sushi, Inc.**

52.     Together with the other Defendants, New Life Sushi, Inc. has owned and/or operated the Sushi Seki Restaurants during the relevant time period.

53.     New Life Sushi, Inc. is a domestic business corporation organized and existing under the laws of New York.

54.     New Life Sushi, Inc. is listed as the "Premises Name" on the active New York State Liquor License for Sushi Seki UES.

55.     The Division of Corporations filing with the New York State Department of State identifies New Life Sushi, Inc.'s Chief Executive Officer as Bi Hang Cheng and its Principle Executive Office at 1143 1st Avenue, New York, New York 10065.  This is the same address as Sushi Seki UES.

56.     New Life Sushi, Inc. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

57.     At all relevant times, New Life Sushi, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

---

[7] *Id.*

58.    New Life Sushi, Inc. applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Seki Restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

59.    At all relevant times New Life Sushi, Inc. has an annual gross volume of sales in excess of $500,000. In this regard, New Life Sushi, Inc. has admitted in past litigation to having gross volume of sales in excess of $500,000.[8]

**Zhong Shen Shi**

60.    Upon information and belief, Shi is a resident of the State of New York.

61.    Upon information and belief, Zhong Shen Shi also goes by the name Seki Shi.

62.    At all relevant times, Shi has been an owner and operator of the Sushi Seki restaurants, Seki, Inc., 365 Seki, Inc., and New Life Sushi, Inc.

63.    Shi is listed as a "Principal" on the active New York State Liquor License for the premises doing business as "Sushi Seki" located at 365-367 West 46th Street, New York, New York, 10036 – Sushi Seki Times Square.

64.    Shi is also listed as a "Principal" on the active New York State Liquor License for the premises doing business as "Sushi Seki" located at 208 West 23rd Street, New York, New York, 10011 – Sushi Seki Chelsea.

65.    Additionally, Shi is identified as the "Owner | Chef" on the centralized website for the Sushi Seki Restaurants.[9]

66.    At all relevant times, Shi has had power over personnel decisions at the Sushi Seki restaurants, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

---

[8] *Id.*
[9] Team, Sushi Seki (*available at* http://www.sushiseki.com/team-1, *last accessed* July 23, 2018).

67.     At all relevant times, Shi has had power over payroll decisions at the Sushi Seki restaurants, including the power to retain time and/or wage records.

68.     At all relevant times, Shi has been actively involved in managing the day to day operations of the Sushi Seki restaurants.  In this regard, in the liquor license applications for Seki 365, Inc. and Seki Inc., Shi answered that he would take active part in management, stating that he would work as "manager & Chef, 11 A.M. – 12:00 A.M. seven days a week" (Seki Inc. application) and "manager & chef, Mon-Sat: 11:30 A.M. to 2 A.M., Sunday close" (365 Seki Inc. application).

69.     At all relevant times, Shi has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

70.     At all relevant times, Shi has had the power to transfer the assets and/or liabilities of the Sushi Seki Restaurants.

71.     At all relevant times, Shi has had the power to declare bankruptcy on behalf of the Sushi Seki Restaurants.

72.     At all relevant times, Shi has had the power to enter into contracts on behalf of the Sushi Seki Restaurants.

73.     At all relevant times, Shi has had the power to close, shut down, and/or sell the Sushi Seki Restaurants.

74.     Shi is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Bi Hang Cheng**

75.     Upon information and belief, Cheng is a resident of the State of New York.

76.     At all relevant times, Cheng has been an owner and operator of the Sushi Seki Restaurants, Seki, Inc., 365 Seki, Inc., and New Life Sushi, Inc.

77.    Cheng is listed as a "Principal" on the active New York State Liquor License for the premises doing business as "Sushi Seki" located at 1143 1st Avenue, New York, New York, 10021 – Sushi Seki UES.

78.    Cheng is also listed as the "Chief Executive Officer" with the Division of Corporations filing with the New York State Department of State for Seki, Inc., the corporate entity operating Sushi Seki Chelsea.

79.    Cheng is also listed as the "Chief Executive Officer" with the Division of Corporations filing with the New York State Department of State for New Life Sushi, Inc., the corporate entity operating Sushi Seki UES.

80.    At all relevant times, Cheng has had power over personnel decisions at the Sushi Seki restaurants, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

81.    At all relevant times, Cheng has had power over payroll decisions at the Sushi Seki Restaurants, including the power to retain time and/or wage records.

82.    At all relevant times, Cheng has been actively involved in managing the day to day operations of the Sushi Seki Restaurants.  In this regard, in New Life Sushi Inc.'s liquor license application, Cheng answered that she would take active part in management, stating she would be "manager, seven days a week, 7:00 P.M. – 3:00 A.M."

83.    At all relevant times, Cheng has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

84.    At all relevant times, Cheng has had the power to transfer the assets and/or liabilities of the Sushi Seki Restaurants.

85.    At all relevant times, Cheng has had the power to declare bankruptcy on behalf of the Sushi Seki Restaurants.

86.     At all relevant times, Cheng has had the power to enter into contracts on behalf of the Sushi Seki Restaurants.

87.     At all relevant times, Cheng has had the power to close, shut down, and/or sell the Sushi Seki Restaurants.

88.     Cheng is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

89.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

90.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

91.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of himself and all similarly situated persons who work or have worked as Tipped Employees at the Sushi Seki Restaurants between February 20, 2015 and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective").[10]

93.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective.

94.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA

_____

[10] The period covered by the FLSA Collective is extended due to a pre-litigation tolling agreement entered into by the parties on February 20, 2018 and terminated on July 23, 2018.

Collective were not paid the full minimum wage rate for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

95.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

96.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> (a) willfully failing to pay their employees, including Plaintiff and the FLSA Collective, minimum wages for all hours worked up to 40 per workweek and premium overtime wages for all hours worked in excess of 40 hours per workweek; and
>
> (b) willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

## CLASS ACTION ALLEGATIONS

97.     Plaintiff brings the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Tipped Employees at the Sushi Seki Restaurants in New York between February 20, 2012 and the date of final judgment in this matter (the "Rule 23 Class").[11]

98.     The Rule 23 Class Members are so numerous that joinder of all members is

---

[11] The period covered by the Rule 23 Class is extended due to a pre-litigation tolling agreement entered into by the parties on February 20, 2018 and terminated on July 23, 2018.

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

99.     There are more than fifty Rule 23 Class Members.

100.     Plaintiff's claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

101.     Plaintiff and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

102.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members.

103.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

104.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

105.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class Members individually and

include, but are not limited to, the following:

(a) whether Defendants failed to pay Plaintiff and the Rule 23 Class minimum wages for all of the hours they worked up to 40 hours per workweek;

(b) whether Defendants correctly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 per workweek;

(c) whether Defendants misappropriated tips from Plaintiff and the Rule 23 Class by distributing tips to tip ineligible positions;

(d) whether Defendants failed to pay Plaintiff and the Rule 23 Class call-in pay as required by the NYLL;

(e) whether Defendants failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices, as required by the NYLL; and

(f) whether Defendants failed to furnish Plaintiff and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

106.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Shawn Baggett**

107.    During his employment, Baggett generally worked the following scheduled hours unless missed time for vacation, sick days and/or holidays: approximately 5 shifts per week from either 3:30 p.m. or 4:30 p.m. to anywhere between 9:30 p.m. to 1:00 a.m.  On average, Baggett generally works between 38 to 43 hours per week.

108.    Throughout his employment, Defendants applied a tip credit towards the minimum wage rate paid to Baggett for work performed as a server.

109.    Defendants failed to notify Baggett in writing of the tip credit provisions of the NYLL, and failed to notify him of the tip credit provisions of the FLSA.

110.    Defendants unlawfully required Baggett to share tips with employees not entitled to tips under the FLSA and/or the NYLL, including, but not limited to, Sushi Chefs, Service & Beverage Directors, and expeditors.

111.    Defendants have suffered or permitted Baggett to perform non-tip producing side work for more than 20% and/or 2 hours on a consistent basis, including pre-shift side work, running side work, and closing side work.  These duties included, but are not limited to: cleaning and setting up tables, rolling hot towels, folding napkins with chop sticks, emptying, cleaning and refilling soy sauce containers, setting up and breaking down Tatami rooms, including cleaning cushions and cleaning rooms, dusting the restaurant, wiping table legs, restocking sake bottles in walk in refrigerator, and setting up and breaking down service stations.

112.    Additionally, Defendants required Baggett to attend pre-shift meetings that ran between 20 and 30 minutes long per shift, for which he was paid at the tip-credit rate.

113.    As a result of the above, Defendants did not satisfy the requirements under the FLSA, and NYLL by which they could apply a tip credit to Baggett's wages. As such, Baggett should have been paid the full minimum wage not the reduced tipped minimum wage rate.

114.    At all relevant times, Baggett was entitled to receive the full statutory minimum wage for the first 40 hours per workweek, and time and one-half the full minimum wage rate for all hours worked beyond 40 per workweek.

115.    Based on information and belief, during the course of his employment, there were times when Baggett would report for duty for a regularly scheduled shift only to be sent home prior to working for three hours.  Defendants failed to properly provide Baggett with "call-in pay" as required by 12 N.Y.C.R.R. Part 146 for these shifts.

116.    Defendants failed to furnish Baggett with proper annual wage notices, as required by the NYLL.

117.    Defendants failed to furnish Baggett with proper wage statements, listing the rates paid, gross wages, and the claimed tip allowance, as required by the NYLL.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wage**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

118.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.    At all times relevant, Plaintiff and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

120.    At all times relevant, Plaintiff and the FLSA Collective were or have been employees within the meaning of 29 U.S.C §§ 201 *et seq.*

121.    At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C §§ 201 *et seq.*

122.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.* because they required Plaintiff and the FLSA Collective to distribute a portion of their tips to workers who do not "customarily and regularly" receive tips, including, but not limited to, Sushi Chefs, Service & Beverage Directors, and expeditors.

123.    Defendants have also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiff and the FLSA Collective to perform a substantial amount of non-tip producing "side work" in excess of 20% of their time at work.  During these periods, Defendants have compensated

Plaintiff and the FLSA Collective at the tipped minimum wage rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

124.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

125.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

126.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

127.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

128.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

129.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

130.    At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

131.    Defendants have failed to pay Plaintiff and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

132.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Rule 23 Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from June 2012 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (e) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; and (f) $13.00 per hour for all hours worked from December 31, 2017 through the present.

133.    Defendants have failed to notify Plaintiff and the Rule 23 Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

134.    Defendants also required Plaintiff and the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of 2 hours or more, or 20% of their work time. During these periods, Plaintiff and the Rule 23 Class were engaged in a non-tipped occupation.

135.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided

for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

136.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

137.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

138.    Defendants failed to pay Plaintiff and the Rule 23 Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

139.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Tip Misappropriation**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

140.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

141.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

142.    Defendants unlawfully required Plaintiff and the Rule 23 Class to share the gratuities they received with employees other than tipped employees, in violation of NYLL Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

143.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
**New York Labor Law – Call-In Pay**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

144.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

145.    During regularly scheduled shifts, Plaintiff and the Rule 23 Class who reported for duty, whether or not assigned to actual work, were permitted to leave by request or permission of Defendants, and were not compensated for: (1) at least three hours for one shift or the number of hours in the regularly scheduled shift, whichever is less; (2) at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and (3) at least eight hours for three shifts totaling eight hours or less or the number of hours in the regularly scheduled shift, whichever is less, as required by 12 N.Y.C.R.R. Part 146.

146.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants up to three hours of wages calculated at their regular or overtime rate of pay, whichever is applicable, as provided for by 12 N.Y.C.R.R. Part 146, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiff and the Rule 23 Class)

147.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

148.    Defendants have failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the regular rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

149.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the Rule 23 Class are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiff and the Rule 23 Class)

150.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

151.    Defendants failed to supply Plaintiff and the Rule 23 Class with an accurate

statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

152.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Employees who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at the Sushi Seki Restaurants in New York.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid minimum and overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.     Unpaid minimum wages, overtime wages, misappropriated tips, call-in pay, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.     Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.     Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H.     Prejudgment and post-judgment interest;

I.      Reasonable attorneys' fees and costs of the action; and

J.      Such other relief as this Court shall deem just and proper.

*      *      *

Dated: New York, New York
      July 24, 2018

                      Respectfully submitted,

                      /s/ Brian S. Schaffer
                      Brian S. Schaffer

                      **FITAPELLI & SCHAFFER, LLP**
                      Brian S. Schaffer
                      Armando A. Ortiz
                      Dana M. Cimera
                      28 Liberty Street, 30th Floor
                      New York, NY 10005
                      Telephone: (212) 300-0375

                      *Attorneys for Plaintiff and*
                      *the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against SUSHI SEKI and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

Shawn Clinton Baggett II
Full Legal Name (Print)