**FITAPELLI & SCHAFFER**
— ATTORNEYS AT LAW —

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

July 9, 2019

**VIA CM/ECF**
Hon. Paul G. Gardephe, U.S.D.J.
United States District Court for the
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

    Re: <u>*Baggett v. 365 Seki, Inc. et al.*, No. 1:18-cv-06645-PGG</u>

Dear Judge Gardephe,

  We represent the Plaintiffs in the above referenced matter. We write to respectfully request judicial approval of the Parties' settlement attached hereto as **Exhibit ("Ex.") A**. The agreement resolves the claims of the named Plaintiff Shawn Baggett and the two opt-in Plaintiffs Dashawn Billings and Chaiyapruk Tulwathana (collectively, "Plaintiffs") for the total amount of $33,000.00, to be divided pro-rata based upon their potential damages. The agreement also calls for $75,000.00 as Plaintiffs' attorneys' fees and costs, which were negotiated after the Parties reached the Plaintiffs' settlement amount. For the reasons outlined below, the Court should approve this settlement as a fair and reasonable compromise of their claims against Defendants.

## BACKGROUND & PROCEDURAL HISTORY

  Named Plaintiff Shawn Baggett filed this action on July 24, 2018 and opt-in Plaintiffs filed consents to join the action shortly thereafter. *See* ECF Nos. 1, 9, 21. Plaintiffs allege that Defendants, who own and operate Sushi Seki, three sushi restaurants in New York City, did not fully comply with their legal obligations necessary to pay Plaintiffs pursuant to the "tip credit" under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *Id.*

  In lieu of filing an answer, Defendants filed two pre-motion letters regarding Rule 12 motions to dismiss certain of Plaintiffs' claims, to which Plaintiffs responded. *See* ECF Nos. 22, 23. Plaintiffs served their Motion for Court-Authorized Notice Pursuant to the FLSA ("216(b) Motion") on Defendants, which was fully briefed and filed with the Court on January 4, 2019. *See* ECF Nos. 32-38, 41. The Court has yet to rule on this Motion.

  The Parties also served and responded to written discovery. Specifically, the Parties served document demands and interrogatories on one another, to which both sides responded to and

produced documents.[1] In the event settlement did not occur, both sides were prepared to submit motions to compel with the Court concerning written discovery prior to conducting depositions.

While undergoing good faith discussions regarding their forthcoming motions to compel, counsel for the Parties engaged in settlement discussions. After multiple conversations, the Parties reached a settlement in principal for $33,000.00 to cover the Plaintiffs' damages, to be divided pro-rata among themselves based on their available damages and paid 10 business days after Court approval and dismissal. After this, the Parties began to negotiate Plaintiffs' attorneys' fees and costs. On June 10, 2019, the Parties reached an agreement on attorneys' fees and costs in the amount of $75,000.00, to be paid in two installment payments. Following this, the Parties negotiated and drafted the Settlement Agreement, which was fully executed on June 20, 2019. *See* **Ex. A**, Settlement Agreement.

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $33,000.00 to the Plaintiffs within 10 business days of approval, was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

Factor one weighs in favor of approval. Based on the payroll provided, Plaintiffs' range of possible recovery was between $0.00 and $50,025.48 – representing base minimum wages, overtime wages, and misappropriated gratuities ($11,437.74). NYLL liquidated damages

---

[1] Relevant here, Defendants produced over 700 pages of written discovery, including Plaintiffs' full employment files and payroll data, which allowed F&S to calculate damages calculations and further evaluate their claims and Defendants' defenses.

($11,437.74), and statutory penalties under the NYLL § 195(1) ($12,150.00) and § 195(3) ($15,000.00). The $33,000.00 fund therefore provides 100% of Plaintiffs' base owed wages, along with 55.9% of Plaintiffs' potential liquidated damages and WTPA statutory penalties. Based on the litigation risks discussed below, especially regarding Plaintiffs' claim for liquidated damages and WTPA statutory damages, the total settlement of $33,000.00 is more than an excellent result.

Factors two and three also favor approval. If the Parties were to continue litigation, the Parties would need to conduct depositions of all parties, including corporate representatives for Defendants. Moreover, in the event the Court granted Plaintiffs' 216(b) Motion, further collective-wide discovery would need to occur. Defendants would then, after discovery, move to decertify the collective and would oppose Plaintiffs' Rule 23 Class Certification motion. This would require further legal briefing from both sides. As such, further litigation would require significant time and expense

In addition, both sides face serious litigation risks relating to damages and liability. Unlike in many wage and hour restaurant cases, Defendants at all times paid its tipped employees at the correct "tipped" minimum wage, paid its workforce for all hours worked, and provides wage notices and wage statements that they argued fulfilled their legal obligations. As a result, while Plaintiffs believe they could establish liability based on alleged deficiencies in Defendants' paperwork, there is a large risk that the Court could view the paperwork as compliant under the NYLL. In addition, another key issue in this case – whether positions such as sushi chefs, the beverage and service director, and expeditors, had sufficient customer interaction to receive tips – is a wholly factual question, requiring significant discovery. Moreover, Defendants would rely upon several Department of Labor Opinion Letters that state certain positions, such as sushi chefs, can participate in a tip pool in certain circumstances. If the Court held that these positions were tip-eligible and Defendants' paperwork was sufficient, then Plaintiffs would be owed nothing. Moreover, there was also risk that the Court would deny or otherwise limit Plaintiffs' §216(b) Motion, which could dramatically reduce the overall potential damages of the case and weaken Plaintiffs' position. As a result, this factor supports approval of this settlement.

Factors four and five also weigh in favor of approval. Both Plaintiffs' counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and have significant experience handling wage and hour claims. *See* **Ex. B**, F&S Qualifications. In addition, there is no fraud and collusion as the Settlement amount represents a significant percentage of Plaintiffs' potential recovery – 100% of their base owed wages and 55.9% of their potential liquidated damages and WTPA statutory penalties.

Last, the red-flag issues identified in *Cheeks* are not present here. The agreement does not contain a confidentiality clause and the release is limited to wage and hour claims. **Ex. A**, at 6. Moreover, as will be discussed below, F&S' requested attorneys' fees are not excessive or constitute more than a third contingency interest in the settlement. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

## THE COURT SHOULD APPROVE THE NEGOTIATED
## ATTORNEYS' FEES AND COSTS

Under the FLSA and NYLL, a prevailing plaintiff is entitled to their reasonable attorneys' fees and expenses. 29 U.S.C. § 216(b); NYLL § 663(1). "Awarding attorneys' fees in this context is meant to encourage members of the bar to provide legal services . . . but for the separate provision of legal fees, many violations of the FLSA would continue unabated and uncorrected." *Zamora v. One Fifty Fifty Seven Corp.*, No. 14 Civ. 8043 (AT), 2016 WL 1366653, at *2 (S.D.N.Y. Apr. 1, 2016).

One of the red-flag issues identified in *Cheeks* were contingency agreements over 40% of the plaintiff's recovery. 797 F.3d at 206. This red-flag is not present here because F&S will not be taking any contingency from the Plaintiffs' settlement amount, as counsel negotiated the requested attorneys' fees and costs separate and apart from Plaintiffs' settlement. The retainer agreement and consent forms executed by the Plaintiffs indicates that counsel has the option to receive the higher of a 33 1/3% contingency *or* attorneys' fees negotiated separately or calculated with the lodestar method. Additionally, Plaintiffs executed the Settlement Agreement, which outlines the amount payable as attorneys' fees and costs. *See* **Ex. A**, at 4.

The attorneys' fees request is fair and reasonable. As discussed above, this is not a low value settlement for Plaintiffs – they are receiving more than double their base wage damages. Moreover, only after Plaintiffs' settlement amount was finalized did the Parties negotiate Plaintiffs' counsel's attorneys' fees award. *See Zamora*, 2016 WL 1366643, at *2 ("[I]n an individual FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorneys' fees." (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Courts in the Second Circuit and this District have approved attorneys' fees awards negotiated separate and apart from the plaintiffs' recovery, especially where the plaintiffs obtain such an excellent result based on their potential damages. *See, e.g.*, *Flores v. Steinway Dental Lab., Inc.*, No. 15 Civ. 4364, 2017 U.S. Dist. LEXIS 20710, at *4-*5 (E.D.N.Y. Feb. 14, 2017) (approving $21,500.00 payable to the plaintiff and $21,000.00 payable as attorneys' fees and costs); **Ex. C**, *Ali v. David Bouley LLC*, No. 14 Civ. 07135, ECF No. 70 (S.D.N.Y. Oct. 18, 2016) (approving $40,000.00 between the two plaintiffs and $57,500.00 in attorneys' fees); *Delilar v. Foodfest Depot, LLC*, No. 15 Civ. 0459, 2016 WL 3452797, at *1-*2 (S.D.N.Y. June 14, 2016) (approving $35,000.00 payable to the plaintiff with $65,000.00 allocated for attorneys' fees); **Ex. D**, *Saldivar v. Aki Renovations Group, Inc.*, No. 15 Civ. 03130, ECF Nos. 38, 36-2 (E.D.N.Y. Feb. 10, 2016) (approving $18,121.61 to the four plaintiffs and $30,000.00 as attorneys' fees); **Ex. E** *Trimmer, et al. v. Barnes & Noble, Inc., et al.*, No. 13 Civ. 579 (JGK), ECF No. 89 (S.D.N.Y. May 21, 2015) (Order and Letter approving of $223,270.00 in attorneys' fees that were negotiated separate from plaintiffs' recovery, which collectively equaled approximately $37,500.00); *Zamora*, 2016 WL 1366653, at *2 (approving $56,843.00 to the plaintiff and $71,657.00 in attorneys' fees).

      A cross check of the requested fee award also supports approval because the requested $75,000.00 is substantially less than F&S' current lodestar. As of the date of this letter, F&S has expended $119,996.25 in attorneys' time prosecuting this action and $665.08 in out-of-pocket expenses.[2] These hours were compiled from contemporaneous time records maintained by each attorney participating in the case and are reasonable for a case that has contained significant legal briefings, significant written discovery,[3] and protracted settlement discussions. Here, through negotiations, F&S has agreed to accept a fee award that is 62.5% of their current lodestar amount. In addition, this request is inclusive of Plaintiffs' Counsel's out-of-pocket litigation costs of $665.08. *See* **Ex. B**, at 6.

      As a result, the requested attorneys' fees and costs are fair and reasonable because they were negotiated separately after F&S secured an excellent result for Plaintiffs and are less than counsel's lodestar.

* * *

      For the above reasons Plaintiffs respectfully request that the Court approve the attached Settlement Agreement and sign and enter the Stipulation dismissing the case with prejudice, attached as **Appendix A** to the Settlement Agreement.

      We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ Brian S. Schaffer*
Brian S. Schaffer

CC:    Defendants' Counsel (via ECF)

---

[2] For a breakdown of the attorney time and rates and expenses, please see **Exhibit B**. In applying billing judgment, F&S removed the time spent on this file by two first-year associates, Maria Laura Crespo and Eric Strum, and a law clerk, who collectively billed approximately 162.4 hours. The amount cited above does not include their time.

[3] For instance, Defendants served 88 separate document requests to each of the three Plaintiffs.